UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Brian Logsdon,                                         Case No. 3:12cv1846

        Plaintiff

  v.                                            MEMORANDUM OPINION
                                                  AND ORDER

Hartford Life and Accident Ins. Co., et al.,

        Defendants

## INTRODUCTION

Plaintiff Brian Logsdon brings this complaint and class action against his former employer, Defendant O.E. Meyer Company, Inc., as well as O.E. Meyer's insurance carrier, Defendant Hartford Life Accident Insurance Company, after Hartford Life discontinued Plaintiff's long term disability ("LTD") benefits. Defendants have each filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss Plaintiff's complaint. For the reasons that follow, Defendants' motions are granted.

## BACKGROUND

Plaintiff worked for O.E. Meyer as a distribution manager until February 28, 2007. While an employee, Plaintiff enrolled as a participant in O.E. Meyer's LTD Plan. *See generally* LTD Plan, Doc. 1-4, Ex. A (hereinafter, "LTD Plan," or the "Plan").[1] The benefits of the Plan are provided

---

[1] Notably, Plaintiff's complaint claims that he is challenging a change made to the Summary Plan Description ("SPD"), not the Plan itself. As Hartford Life points out, however, the document attached to Plaintiff's complaint, and the document to which the complaint repeatedly references as the SPD is not the SPD, but is the Plan itself. *See* Ex. A, Doc. 1-4 at 2 (document titled "GROUP BENEFIT PLAN"); *see also* Pl's. Compl. at ¶¶ 18, 20 (referring to Ex. A as the

pursuant to a group insurance policy (the "Policy") issued by Hartford Life to O.E. Meyer. The Plan lists O.E. Meyer as the Plan Administrator, while explaining that Hartford Life is the "Claims Fiduciary," with "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy."

The terms of the Plan contain a multi-part definition of "disability," with each part of the definition applying at different intervals after the date of injury:

> **Disability** or **Disabled** means:
> 1. During the Elimination Period,[2] you are prevented from performing one or more of the Essential Duties of **Your Occupation**;
> 2. For the 24 months following the Elimination Period, you are prevented from performing one or more of the Essential Duties of **Your Occupation**, and as a result your Current Monthly Earnings are less than 80% of your Indexed Pre-disability Earnings;
> 3. After that, you are prevented from performing one or more of the Essential Duties of **Any Occupation**.

Plan at 17 (emphasis regarding repeated use of "Occupation" added).

On February 27, 2007, Plaintiff was injured while working for O.E. Meyer. Plaintiff subsequently applied and was approved for LTD benefits under the Plan. After expiration of the ninety-day Elimination Period on May 27, 2007, Plaintiff began receiving benefits for the twenty-four month interval that is governed by the "Your Occupation" portion of the Plan's Disability definition.

On December 3, 2008, Hartford Life sent a letter to Plaintiff (the "December 3, 2008 letter"), which recited verbatim the multi-part definition of disability as it appears in the Plan, and as it is quoted above in this Opinion. The letter also went on to remind Plaintiff that the "Any Occupation" portion of the Plan's disability definition would take effect on May 28, 2009. *See* Dec.

---

SPD); Pl's Resp., Doc. 21 at 5 (maintaining that Ex. A is the SPD, not the Plan). In the context of the instant motion to dismiss, I will treat Plaintiff's insistence that the SPD is attached to the complaint as an unwarranted factual inference, s*ee Republic Bank*, *infra*, 683 F.3d at 246, and will refer to the document, and to Plaintiff's complaint, as involving "the Plan."

[2] The Elimination Period refers to the ninety-day period following the date an employee first becomes disabled. No benefits are payable during the Elimination Period.

3, 2008 Letter to Pl., Doc. 18-8, Ex. 1 ("Effective May 28, 2009 you must be considered totally disabled as outlined in the second portion of the above definition in order to continue to be eligible for LTD benefits.").

On April 2, 2009, Hartford Life again sent a letter to Plaintiff (the "April 2, 2009 letter"), reminding him that the operable portion of the Plan's Disability definition would change on May 28, 2009:

> Please refer to our letter of December 3, 2008 in which we advised you that you must meet a different definition of Disability in order to remain eligible for LTD benefits on and after May 28, 2009. Based on a thorough review of all of the medical and vocational information in your claim file received to date, we expect that . . . you will continue to meet the policy definition of Disability.

Apr. 2, 2009 Letter, Doc. 1-6, Ex. C at 1.

Hartford Life went on to pay Plaintiff LTD benefits under the Plan's "Any Occupation" standard from the end of May 2009 into 2010. During late 2009 and early 2010, however, Hartford Life conducted an investigation of Plaintiff's disability, which led it to issue a Claim Denial Letter on April 27, 2010 (the "Claim Denial Letter"). The Claim Denial Letter explained that Plaintiff would no longer receive LTD Benefits because, based on video surveillance of Plaintiff, an interview with Plaintiff, and a review of information from medical personnel, Plaintiff no longer met the Plan's definition of Disability. The Claim Denial Letter recited verbatim that definition, and went on to explain that:

> [t]he definition of Disability in your contract changed as of 5/28/09. As of this date, you must be disabled from Any Occupation to continue to receive LTD benefits. . . . Based upon review of your claim . . . we've determined that you have the functional capacity to perform work comparable to a sedentary physical demands level occupation.

Claim Denial Letter, Doc. 1-7, Ex. D at 1, 3, 5.

Plaintiff stopped receiving LTD benefits effective the date of the Claim Denial Letter.

On May 4, 2012, Plaintiff's counsel sent a request for specific Plan documents to Hartford Life, but Hartford Life did not provide the documents as requested. Plaintiff subsequently filed the instant lawsuit against Defendants on August 1, 2012. Count I alleges, on behalf of Plaintiff and all other similarly situated class members, that Defendants made an illegal, informal change to the Plan's definition of Disability. Counts II and III are brought by Plaintiff only, with Count II seeking judicial review of the denial of Plaintiff's LTD benefits, and Count III seeking statutory damages for Defendants' failure to provide Plan documents as requested. Defendants now move to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6).

## STANDARD

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a trial court's function is to test the legal sufficiency of the complaint. The court shall accept the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), while viewing the complaint in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Jones v. City of Carlisle, Ky.*, 3 F.3d 945, 947 (6th Cir. 1993). The court need not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *Republic Bank & Trust Co. v. Bear Sterns & Co., Inc.*, 683 F.3d 239, 246 (6th Cir. 2012).

To survive a motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

ANALYSIS

**COUNT I**

Count I alleges that Hartford Life's December 3, 2008 letter—which explained that "[e]ffective May 28, 2009 you must be considered totally disabled as outlined in the second portion of the above definition [of Disability]"—illegally modified the Plan's Disability definition in contravention of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Count I further claims that Hartford Life sent an illegal December 3, 2008 modification letter not only to Plaintiff, but to all similarly situated Plan participants.

Though I am bound to accept Plaintiff's factual allegations as true, *Hishon*, 467 U.S. at 73, I am not bound to accept unwarranted inferences cast in the form of factual allegations. *Republic Bank*, 683 F.3d at 246. Here, Count I amounts to the latter. Plaintiff's complaint alleges that Hartford Life's December 3, 2008 letter illegally altered the Plan by changing the definition of Disability. Yet, the Plan document itself, which is attached to Plaintiff's complaint, demonstrates that the change complained of was not a change at all. Rather, it was a proper operation of the express terms of the definition:

> **Disability** or **Disabled** means:
> . . .
> 2. For the 24 months following the Elimination Period, you are prevented from performing one or more of the Essential Duties of **Your Occupation** . . .
> 3. After that, you are prevented from performing one or more of the Essential Duties of **Any Occupation**.

Plan at 17. As applied to Plaintiff, the operable portion of the Disability definition properly changed to the "Any Occupation" standard on May 28, 2009, twenty-four months after the May 28, 2007 initiation of the "Own Occupation" standard. Thus, Plaintiff's assertion that Hartford Life's December 3, 2008 letter illegally changed the definition of Disability amounts to an unwarranted inference that I am not required to accept as true. As such, Count I fails to state a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570.

5

Count I is not salvaged by Plaintiff's alternative theory of liability—advanced for the first time in his response brief—that Hartford Life's December 3, 2008 letter illegally altered the Plan because the letter only recited the Plan's definition of Disability, and did not also recite the Plan's definition of Essential Duty. Plaintiff characterizes this omission as an "informal deletion of the critical language," seemingly to suggest that the letter's failure to recite the Essential Duty definition altered the terms of the Plan. Again, such an allegation is an unwarranted factual inference that is at odds with the Plan document itself, which is attached to Plaintiff's complaint and clearly spells out the definition of Essential Duty. Accordingly, Count I is dismissed.

**COUNT II**

Count II seeks judicial review of the denial of Plaintiff's LTD benefits. Count II must fail for two reasons.

First, Plaintiff seems to challenge the denial of benefits on grounds that Defendants illegally changed the definition of Disability such that Plaintiff would no longer be eligible. As explained above, such an assertion is erroneous and cannot sustain a claim.

Second, Plaintiff has not alleged he exhausted administrative remedies prior to seeking judicial review, as required by ERISA. *See Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 504 (6th Cir. 2004) (quoting *Miller v. Met. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991)) (participant in ERISA-covered plan must exhaust administrative remedies prior to commencing federal court action). Plaintiff points out, however, that the Sixth Circuit does not require exhaustion of administrative remedies where such an exercise would be futile. *Coomer*, 370 F.3d at 505. Moreover, Plaintiff points to at least one case where the Sixth Circuit held that a well-founded allegation that a provider illegally changed a plan's terms—as opposed to an allegation that the provider improperly interpreted the plan—gives rise to a situation in which administrative remedies may be futile. *See Constantino v. TRW, Inc.*, 13 F.3d 969 (6th Cir. 1994) (excusing failure to exhaust administrative

6

remedies where "[t]he [district] court viewed Plaintiffs' suit as directed to the *legality* of TRW's amended Plan, not to a mere *interpretation* of it. Thus, if Plaintiffs were to resort to the administrative process, TRW would merely recalculate their benefits and reach the same result.") (emphasis in original). As discussed above, however, Plaintiff cannot maintain a claim for an illegal change to the terms of the Plan, and as such, cannot be excused from the exhaustion requirement. Count II is also dismissed.[3]

## COUNT III

Count III seeks statutory damages under ERISA for Defendants' failure to provide Plaintiff with certain Plan documents after Plaintiff's counsel sent a written request for such documents to Hartford Life. Plaintiff's response brief abandons Count III, however, conceding that ERISA requires document requests to be sent to the claims administrator, O.E. Meyer. *See* 29 U.S.C. § 1024(b)(4) ("[T]he administrator shall, upon written request . . . furnish a copy of [certain plan documents]."). Therefore, Count III is dismissed.

## CONCLUSION

For the reasons stated herein, Defendants' Fed. R. Civ. P. 12(b)(6) motions to dismiss are granted. Doc. 18; Doc. 19. This case is closed.

So Ordered.

s/Jeffrey J. Helmick
United States District Court Judge

---

[3] Defendants also argue that Count II fails because Plaintiff cannot demonstrate that Hartford Life's decision to deny Plaintiff's LTD benefits constitutes an arbitrary and capricious interpretation of the Plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (court reviews interpretation by plan administrator or claims fiduciary under arbitrary and capricious standard where, as here, plan delegates full discretion to administrator or fiduciary); *accord Youngstown Aluminum Prods. v. Mid-West Benefit Servs.*, 91 F.3d 22, 25 (6th Cir. 1996) (citing *Firestone*). I need not address this issue, however, as Plaintiff has expressly disclaimed any argument that he is challenging Hartford Life's interpretation of the Plan. *See* Pl's. Resp., Doc. 21 at 6 ("Counts one (1) and two (2) of Plaintiff Logsdon's complaint are directed to the legality of the informal modification of the definition of disability, not the interpretation of the [Plan]. . . . Plaintiff Logsdon . . . is alleging the informal modification of the [Plan's] definition of disability was illegal. He is not challenging the interpretation of the plan's language.").